U.S.IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LAURA OWENS and <br> JENNIFER JONES <br><br> Plaintiffs, <br><br> VS. <br><br> UNIVERSITY OF TEXAS AT TYLER <br><br> Defendant. | § <br> § <br> § <br> § <br> §    Civil Action No: _____ <br> § <br> § <br> § <br> § <br> §    JURY DEMANDED <br> § |

# PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs Laura Owens and Jennifer Jones ("Plaintiffs") bring this suit against the University of Texas at Tyler (the "Defendant") under federal law. The causes of action and summary of claims relating thereto are addressed below:

## I. NATURE OF SUIT

1. Plaintiffs were subject to sexual harassment by a direct supervisor over multiple years while working for Defendant UT Tyler. They reported the harassment to Defendant, but Defendant manipulated the resulting investigation to ensure that the investigation concluded that the perpetrator did not engage in sexual harassment because the perpetrator was in the process of being selected as the next Dean of the College of Education and Psychology.

2. Defendant took no remedial action against the harasser even though its own investigation was forced to conclude that the harasser engaged in sexual misconduct toward Plaintiffs since 2015. Defendant inexplicably refused to allow Plaintiffs to report to anyone besides the harasser after the complaint and investigation. Both Plaintiffs have suffered emotional pain and suffering, loss of enjoyment of life, and embarrassment due to the harassment and related

coverup. Plaintiff Jones was forced to resign from her lucrative and promising position with UT Tyler as a result.

3.  Plaintiffs bring this suit against Defendant for violations of Title VII of the Civil Rights Act.

## II. PARTIES

4.  Plaintiff Laura Owens is an individual currently residing in the State of Texas and may be contacted through the undersigned counsel.

5.  Plaintiff Jennifer Jones is an individual currently residing in the State of Texas and may be contacted through the undersigned counsel.

6.  Defendant University of Texas at Tyler is a state-funded university located at 3900 University Boulevard, Tyler, TX 75799 and may be served through its general counsel Michael Donley or through the attorney general's office in Austin Texas.

## III. JURISDICTION & VENUE

7.  The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and through the doctrine of supplemental jurisdiction.

8.  Venue for all causes of action stated herein lies in the Eastern District of Texas because the acts alleged in this Complaint took place in whole or in part within the boundaries of this District, pursuant to 28 U.S.C. § 1391.

9.  All conditions precedent to suit have been satisfied as Plaintiffs filed timely charges of discrimination with the United States Equal Opportunity Commission on September 20, 2019 and September 24, 2019, respectively, and received their Notices of Right to Sue on June 10, 2020. Plaintiffs' claims under the Civil Rights Act of 1964, (as amended), 42 U.S.C. §§2000e et. seq.

("Title VII"), are being commenced within the required statutory time limits of Title VII as (a) the charge was filed with 300 days of the last acts of sexual harassment, (b) the charge was filed within 300 days of the retaliation, and (c) this lawsuit is being filed within 90 days of the Notice of Right to Sue.

## IV. FACTUAL BACKGROUND

*Plaintiff Laura Owens*

10. Plaintiff Laura Owens ("Owens") is a Lecturer of Psychology at the University of Texas at Tyler and has been since 2005.  Wesley Hickey ("Hickey") was Director of the School of Education until recently being appointed Dean of the College of Education & Psychology.

11. In March 2015, Hickey began a four-year pattern of offensive, unwelcome and persistent verbal sexual advances, comments, and behavior toward Owens.  When the behavior began, Hickey was the Interim Dean of the College of Education & Psychology and one of Owens' two direct supervisors. His behavior created a hostile work environment for Owens.

12. Hickey's visits consisted of making explicit, unwelcome comments about his personal sex life, his physique, Owens' physique, and questioning Owens about her dating life. Hickey would make comments about Owens' work attire and what her future spouse would "like" as well as referring to her sexual behavior in the bedroom.

13. Both Hickey and Owens began working at UT Tyler during the fall 2005 semester as members of the College of Education and Psychology.  Neither Hickey nor Owens had spoken to one another other than a cordial nod or wave when passing until Owens' divorce became public in 2015 while Hickey was Interim Dean.  Once the divorce became public, Hickey began making persistent harassing visits to Owens' office. Some days, he would exhibit this behavior two or three times in a single day. In response, Owens moved furniture in her office to create a barrier

between herself and Hickey and began severely limiting her time on campus in an attempt to avoid Hickey's pervasive and unwanted behaviors.

14.     Owens feared retaliation and, being a newly single mom, did not want to risk losing her job by reporting him sooner to a level of administration higher than Hickey's.  As a lecturer, Owens did not have the security of the tenure system as protection from potential retaliation.

15.     In April 2019, Owens filed a Title IX complaint against Hickey at UT Tyler.  She reported Hickey to Human Resources, the Compliance Office, and the Office of the Provost.  UT Tyler's Title IX Office conducted an investigation and found Hickey guilty of sexual misconduct.  However, UT Tyler failed to follow many federally mandated protocols for the Title IX process (e.g. not providing victim's resources).

16.     Upon review of the initial Title IX investigation report, Owens discovered that Hickey had provided false statements to the Title IX Office.  Hickey alleged without evidence that Owens had misused funds for a work trip in order to discredit her.  Although Owens subsequently provided the Title IX Office with documents and witnesses objectively proving Hickey's claims false, the claims were included in the final report, causing the administration to believe his allegations and deny Owens further professional work opportunities.  The Title IX report therefore compounded the harassment initiated by Hickey.

17.     Other witnesses—whose names were provided to UT Tyler's Title IX office—have knowledge of Hickey's unwanted and persistent visits as well as Owens' voiced concerns. One of the witnesses even confronted Hickey about his frequent visits to Owens' office.  Numerous other female employees at UT Tyler have been subject to the same or similar behavior from Hickey.  Additionally, Hickey is believed to be involved in an impermissible (according to UT Tyler's handbook or "HOP") romantic relationship with another female employee in his department and

is well-known to show this employee favoritism in comparison to other female employees who have not responded positively to his sexual advances.

18. During the time of the investigation, Hickey interviewed to be the new dean of the College of Education and Psychology. Although Defendant was aware of his conduct, they promoted him, and he is once again Owens' supervisor. Owens made two official requests through counsel to be re-assigned to another administrator. Defendant has denied these requests each time and required Owens to continue to directly report to her harasser.

19. As outlined above, Owens was subjected to hostile work environment harassment based upon her sex. The harassment was severe and pervasive to the point where it significantly affected the terms and conditions of her employment with Defendant. Defendant knew or should have known of the harassment since 2015 and failed to take remedial action to this date, even after their own investigation found that Hickey engaged in sexual misconduct toward Owens and Jones since 2015.

20. After the investigation concluded, Owens met with HR to discuss her working conditions going forward. UT Tyler decided to alter Owens' working conditions by excluding her from any meetings or gatherings where Hickey would be present. This sets Owens up for failure and is retaliatory in nature. Approximately 40% of Owens' job duties are service to the university. A substantial part of her service duties and responsibilities include chairing university-wide committees as well as attending many different committee meetings on campus as a committee member. For example, Owens represents the College of Psychology and Education across campus. Being on these committees, especially where she serves as chairperson, requires her to work closely with deans and chairs. If Owens avoided all places where Hickey might be present, she would be unable to fulfill her responsibilities on campus. Owens' annual evaluation

and merit raises are based on two categories: teaching and service. Essentially, Defendant's workplace "accommodations" are meant to prevent Owens from receiving "meets expectations" on her yearly evaluations due to inadequate service-related performance. If Owens does not meet expectations on her yearly evaluation, her contract can easily be not renewed.

21. Defendant's discrimination was intentional, and Defendant acted with malice or reckless indifference to Owens' protected rights.

*Plaintiff Jennifer Jones*

22. Plaintiff Jennifer Jones ("Jones") began working at UT Tyler as a summer adjunct professor of Educational Leadership and Policy Studies in May of 2015 until her tenure-track assistant professor position officially began August 2015. Soon after she began working at UT Tyler, Hickey, Jones' direct supervisor, began a persistent pattern of unwelcome and pervasive sexual harassment towards Jones. This pattern of persistent sexual harassment continued for four years. The persistent sexual harassment and hostile work environment forced Jones to resign from the university. At the time of Jones' hire, Hickey served as Interim Dean of the College of Education and Psychology and oversaw the Educational Leadership and Policies Studies Department Chair. He was then promoted to Director of the School of Education and the Educational Leadership Dept. merged with the School of Education. In each of these roles Dr. Hickey served as Jones' direct supervisor.

23. Not long after Jones began working at UT Tyler, Hickey began making unwelcome and offensive comments of a sexual nature to Jones. On the days Jones was on campus, Hickey regularly commented on Jones' appearance, clothing, and physique. Hickey's behavior persisted and progressed. He asked Jones inappropriate questions about her relationship with her husband

and the characteristics of men Jones would like in a romantic/dating relationship. On several occasions he asked Jones why she would not hangout with him after-hours at out-of-town conferences. Hickey's unwelcome and offensive conduct also included statements regarding his sexual relations with his wife. When Jones was on campus, Hickey would frequently show up in her office without reason. Like Owens, Jones began limiting her time on campus due to Hickey's persistent unwanted advances. The inappropriate, unwanted sexually harassing behaviors and comments towards Jones created a hostile work environment.

24. Originally, Jones attempted to remedy the situation by ignoring Hickey's advances because she feared retaliation and believed she was alone in being subject to Hickey's sexual harassment. Jones did not trust Defendant's sexual harassment investigative and remedial process due to prior reporting of discrimination and mistreatments of female coworkers—a belief that, sadly, proved to be accurate in her and Owens' situations.

25. Jones eventually confided in a colleague and found out that other female non-tenured faculty (Owens) had similar experiences of sexual harassment by Hickey. This prompted Jones to file a Title IX complaint.

26. In April 2019, Jones reported the sexual harassment incidents to the HR Director and filed a Title IX complaint against Hickey with the Title IX office. Jones also submitted a report to the Office of Compliance. The Title IX grievance process was substantially flawed and biased from the beginning. Defendant's Title IX Office failed to conduct an impartial and thorough investigation. Defendant's Title IX Office ignored federal mandates and procedures and policies throughout the grievance and investigation process and failed to take reasonable steps to investigate the sexual harassment (e.g. witness interviews, used biased language, included non-factual information and statements, report includes multiple interpretation and transference of

evidence errors). Defendant's Title IX Office ignored and failed to include critical evidence provided to them during initial complaint and throughout the investigation.

27. Defendant's Title IX Investigator did not formally explain the complaint and investigation process, nor did the Title IX Office provide information on all services provided to victims. The Title IX Investigator failed to provide a notice of the allegation and notice of investigation that was provided to Hickey. Notification to the victim was important because the Title IX Office combined Owens' complaint and a consensual report with the Title IX complaint. The Title IX Investigator failed to keep Jones informed of the status of the investigation. Jones had to advocate for herself by requesting information regarding the process and status updates to receive any information regarding the investigation. Jones also had to research victim assistance services. She was told there was a non-contact order during the investigation and that the harasser should not have contact with her, nor she with him. Jones then asked HR how she should handle the upcoming meetings that she had with Hickey or included him. The HR Director encouraged Jones to continue her normal contact and meetings with Hickey.

28. After researching on her own what was available for victims, Jones requested victim's assistance from Title IX Office to be reassigned to another supervisor. Jones was notified by the Title IX Coordinator that her request had been denied by the HR Director. Jones was not provided with an explanation for the denial.

29. Defendant's Title IX investigators based their investigative practices (including evidence gathering and evaluation) and interpretation of evidence to match a conclusion rather than letting the evidence lead them to a conclusion. This is evident in the selection of what testimony was included and excluded in the report. Much of Plaintiffs' testimony is missing from the report, conversely, Hickey's false statements and retaliatory allegations that Jones was "having

trouble" with a "grant" and "is trying to protect herself early on" and non-factual statements by his witnesses were included. In the Initial Title IX Report, Jones found Hickey provided false and misleading information which Jones subsequently refuted with evidence proving Hickey provided false information. The Title IX Investigator, upon receiving the information from Hickey did not verify the credibility of information provided by him or his witnesses.

30. The Final Title IX Report continued to exclude this information. When Jones requested a reason for the exclusion of her testimony proving Hickey and witnesses provided false information, Defendant's Title IX Office stated these did not negatively affect the outcome of the findings.  In response, Jones provided the Title IX Office information on why her evidence information was relevant—it implicated Hickey for making false allegations and statements and absolved the retaliatory accusations against Jones.

31. Defendant's Title IX office chose to protect the harasser from the violation of mandated policy against providing false and misleading statements. This policy violation is a finding the Title IX Office chose to ignore, leaving the report to paint an incorrect picture of the totality of the violation and continues to injure Jones.

32. Defendant attempted to gloss over the harassment by retaining the false allegations and misleading statements by Hickey within the report and failing to correct the report to show that evidence was provided that implicated him for false statements.

33. The Initial Title IX Report circulated to Plaintiffs for review and comment amazingly did not find that Hickey engaged in sexual misconduct or sexual harassment. After extensive responses from Plaintiffs pointing out the absurdity of this conclusion given the evidence, the Final Title IX Report concluded differently.

34. **Ultimately, Defendant's own Title IX *Final Investigative Report* found Hickey engaged in sexual misconduct toward Jones and Owens over the previous four years.**

35. The report, though, stopped short of concluding that Hickey engaged in sexual harassment in a naked attempt to avoid admitting liability.  The reason Defendant gave for not finding Hickey engaged in sexual harassment was because his sexual misconduct toward Plaintiffs was not "daily"—a requirement unknown to Title VII law and UT Tyler's own Handbook of Operating Procedures.

36. Jones also reported and provided Defendant's Title IX Office with firsthand witness testimony regarding a consensual relationship policy violation between Hickey and another female non-tenured faculty subordinate and direct report to whom he showed favoritism in comparison to other non-tenured female faculty who did not respond positively to his sexual advances.  Furthermore, she provided evidence to the Title IX Office of the preferential treatment by Hickey towards this faculty member.  The Final Title IX Report did not find that Hickey had an inappropriate relationship with this subordinate because, in a truly bizarre twist of reasoning, the investigators did not find "*physical evidence*" of the relationship.  Again, the clear objective was to protect Hickey since he was to be the next dean of the college.

37. On May 7, 2019, Defendant inexplicably declined Jones' request to be assigned to a supervisor other than Hickey.  The refusal, combined with the harassment, made Jones' working conditions at the University intolerable to the point where she felt compelled to resign, and she did so shortly thereafter.

*UT Tyler*

38. Hickey's harassing behavior was well-known within the university to the point of other employees even trying to intervene to inhibit his advances.  Hickey was brazen about his

actions because he likely (and correctly) assumed he was immune from censure due to his status, friendships, and connections within the university.  As such, Defendant knew, or at least should have known, of Hickey' behavior years before Plaintiffs' eventual Title IX complaints, and, therefore, Defendant was negligent in controlling working conditions.  Defendant did not take remedial action before the Title IX complaints, nor did they after the Title IX investigation.

39. Plaintiffs' delay in initiating Title IX complaints regarding Hickey's harassment was reasonable because (1) they feared Defendant's retaliation given Hickey's status within the university, and (2) they believed that the Title IX process would ultimately prove futile given Defendant's knowledge of Hickey's behavior and apparent lack of concern regarding the same.  Unfortunately for Plaintiffs, both beliefs ultimately proved true.

40. UT Tyler Administration directly manipulated the Title IX Office to conduct the investigation in the manner it did and avoid concluding that Hickey engaged in sexual harassment.  Defendant's Chief Compliance Officer even stated that the investigators were "rushed," under a "ton of stress" and pressure "to just get it done" by University Administration because of the then-ongoing dean search, which resulted in Hickey's dean promotion.  These actions communicated to the Title IX investigators that Hickey was going to be the next dean and to conclude their investigation accordingly.  In other words, the fix was in and the only conclusion acceptable to University Administration was that Hickey did not sexually harass Plaintiffs, no matter the evidence.

41. Defendant simply betrayed the victims of sexual harassment to protect its choice of Hickey to become the next dean.

42. Defendant's coverup has exacerbated the traumatic stress Owens and Jones have experienced, and continue to experience, from the sexual harassment and hostile work environment.

43. Since 2015, Plaintiffs were subjected to sexual harassment that created a hostile work environment and were intentionally discriminated against by Defendant. Defendant knew or should have known of the harassment since 2015 and failed to take prompt remedial action. Defendant failed to protect Plaintiffs' rights and has set a precedent to others who have been sexually harassed now and in the future at the UT Tyler. Other employees who were witnesses to these circumstances now know that UT Tyler does not side with the victim, and if they encounter discrimination will refrain from submitting a Title IX report or other grievances.

## VI. CAUSES OF ACTION

44. Plaintiffs incorporate Paragraphs 1 through 43 as if fully stated herein.

45. Plaintiffs have satisfied all jurisdictional prerequisites in connection with their claims under the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§2000e et. seq ("Title VII").

46. Defendant is an "employer" as defined by Title VII.

47. Plaintiff are "employees" as defined by Title VII.

48. During the time that Plaintiffs were employed by Defendant, they were subjected to severe and pervasive sexual harassment as defined by Title VII. These actions created a hostile-work environment, affected the terms and conditions of Plaintiffs' employment, and ultimately led to the denial of advancement opportunities and the constructive discharge of Plaintiff Jones.

49. As described above, Defendant intentionally and willfully violated Title VII by allowing the sexual harassment and retaliation against Plaintiffs.

50. In sexually harassing and illegally retaliating against Plaintiffs, Defendant acted with malice and/or reckless indifference to the statutory-protected rights of Plaintiffs.

51. Defendant did not implement prompt remedial measures in response to the ongoing sexual harassment.

52. As a result of Defendant's violations of Title VII, (as mentioned above), Plaintiffs have suffered actual damages in the form of lost wages and benefits, (past and future), in an amount that has not yet been fully established, but which can be estimated for the purpose of bringing this lawsuit. Plaintiffs have also suffered mental trauma, emotional pain and suffering, loss of enjoyment of life, and other losses.

53. As a result of these willful and intentional violations of Title VII mentioned above by Defendant, Plaintiffs request that they be awarded all compensatory and punitive damages to which they are entitled, equitable and/or injunctive relief, and attorney fees and costs.

## VII. JURY DEMAND

54. Plaintiffs request a jury trial.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Wherefore, Plaintiffs request that on final trial, Plaintiffs have judgment against Defendant as follows:

a. Judgment against Defendant for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial;

b. Judgment against Defendant for compensatory damages, (including, but not limited to, mental anguish and loss of enjoyment of life), in the maximum amount allowed by law;

c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

d. An order that Defendant take such other and further actions as may be necessary to redress Defendant's violation of Title VII;

e.  Pre-judgment and post-judgment interest at the maximum amount allowed by law;

f.  Costs of suit, including attorney's fees and other costs; and

g.  The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ George Cowden, IV _____
GEORGE COWDEN, IV
*Lead Counsel*
State Bar Card No. 24071492
george@cowdenlawfirm.com
**The Cowden Law Firm, PLLC**
110 N. College Ave., Suite 1010
Tyler, Texas 75702
(903) 471-3731

/s/ Eric Kolder_____
ERIC KOLDER
State Bar Card No. 24083323
ekolder@rameyflock.com
ARCHER K. RAMEY
State Bar No. 24103596
aramey@rameyflock.com
**Ramey & Flock, PC**
100 E. Ferguson, Suite 404
Tyler, Texas 75702
(903) 597-3301
(903) 597-2413 (FAX)

**ATTORNEYS FOR PLAINTIFFS**