IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LAURA OWENS and JENNIFER JONES, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 6:20-CV-00372-JDK-JDL |
| v. | § § | |
| UNIVERSITY OF TEXAS AT TYLER, | § § § | |
| Defendant. | § § | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant University of Texas at Tyler's ("UTT" or "the University") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 5.) Plaintiffs Laura Owens and Jennifer Jones ("Plaintiffs") have filed a response in opposition (Doc. No. 6) to which UTT has filed a Reply. (Doc. No. 7.) For the reasons stated herein, the Court **RECOMMENDS** that Defendant's motion (Doc. No. 5) be **DENIED**.

**BACKGROUND**

Plaintiffs, Laura Owens and Jennifer Jones, who are current and former employees of UTT, filed this action against UTT for violations of Title VII of the Civil Rights Act claiming sexual harassment by their supervisor and retaliation by UTT through the constructive discharge of Plaintiff Jones and the reduction of Plaintiff Owens' responsibilities. (Doc. No. 6 at 1.) Both Plaintiffs contend that they were subject to a hostile work environment, and that UTT knew or should have known about the harassment but failed to take remedial action. (Doc. No. 1 at ¶¶ 19, 37–38.) Plaintiffs filed their Complaint on July 2, 2020. (Doc. No. 1.) On September 4, 2020, UTT

filed a motion to dismiss Plaintiffs' Complaint for failure to allege facts within the limitations period for their harassment claim and failure to allege an adverse employment action for their retaliation claim. (Doc. No. 5.) Plaintiffs filed a response in opposition on September 18 (Doc. No. 60), and UTT filed its reply on September 22. (Doc. No. 7.)

Owens has been employed as a lecturer at UTT since 2005 while Jones was a professor there from 2015 to 2019. (Doc. No. 1 at ¶¶ 10, 20.) Wesley Hickey ("Hickey") was the Director of the School of Education until recently being appointed Dean of the College of Education & Psychology (Doc. No. 1 at ¶ 10.) He was Plaintiffs' supervisor during the time at issue. (Doc. No. 1 at ¶¶ 11, 22.) Plaintiffs allege that beginning in 2015, Hickey made frequent visits to Plaintiffs' offices to make unwelcome comments about his sex life, their dating and married lives, and their sexual preferences. (Doc. No. 1 at ¶¶ 11–13, 23.) Plaintiffs filed Title IX complaints with UTT regarding Hickey's harassment in 2019. (Doc. No. 1 at ¶¶ 15, 25.) UTT's subsequent investigation found that Hickey had engaged in sexual misconduct towards Plaintiffs since 2015. (Doc. No. 1 at ¶ 34.) Upon the conclusion of the investigation, UTT promoted Hickey to Dean of the College of Education & Psychology. (Doc. No. 1 at ¶ 18.)

After Hickey's promotion, Plaintiffs allege that they each requested to be assigned a different supervisor but were both denied. (Doc. No. 1 at ¶¶ 18, 37.) Following the refusal, Plaintiff Jones resigned. (Doc. No. 1 at ¶ 37.) Plaintiffs allege that after UTT refused her request for a different supervisor, she felt the only way to avoid Hickey's harassment was to resign. (Doc. No. 1 at ¶ 37.) Plaintiffs contend that UTT retaliated against Owen for the Title IX complaint by altering her working conditions to exclude her from any meetings or gatherings where Hickey would be present. (Doc. No. 1 at ¶ 20.) They contend that this would make it impossible to fulfill her job responsibilities as a substantial part of her duties are service to the university through such

gatherings. (Doc. No. 1 at ¶ 20.) Because her yearly evaluations are based equally on both teaching and service to UTT, Plaintiffs allege that UTT altered her working conditions to prevent her from receiving "meets expectations" on her yearly evaluations and thus have a justification not to renew her contract. (Doc. No. 1 at ¶ 20.) Plaintiffs filed their complaints with the Equal Employment Opportunity Commission ("EEOC") in September 2019. (Doc. No. 6 at 6.)

Plaintiffs allege that Hickey's behavior was well known within the university as other employees tried to intervene to stop his advances. (Doc. No. 1 at ¶ 38.) They contend that UTT knew or should have known about Hickey's behavior years before the Title IX complaint. (Doc. No. 1 at ¶ 38.) They also contend that UTT did not take any remedial action regarding Hickey either before the or after the Title IX investigation. (Doc. No. 1 at ¶ 38.) As to the Title IX investigation, Plaintiffs further allege that UTT manipulated and rushed the investigation because the University could not promote Hickey if the investigation found that he had sexually harassed the Plaintiffs. (Doc. No. 1 at ¶ 40.) Plaintiffs assert that UTT violated Title VII when it allowed the sexual harassment and retaliation against them which created a hostile-work environment, affected the terms and conditions of their employment, and ultimately the denial of employment opportunities for Owens and the constructive discharge of Jones. (Doc. No. 1 at ¶ 49.)

## LEGAL STANDARD

When a defendant files a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. Louisiana State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must assume that all well-pleaded facts are true, and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir. 2012). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 217. The Supreme Court clarified the standards that apply in a motion to dismiss for failure to state a claim in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible." *Id.* The distinction between merely being possible and plausible was reiterated by the Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 677–78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. *Id.* at 678.

A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," or if the complaint pleads facts merely consistent with or creating a

suspicion of the defendant's liability. *Id.*; *see also Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 421 (5th Cir. 2006).

## DISCUSSION

Here, UTT contends that Plaintiffs' claims should be dismissed because they have not sufficiently alleged harassment within the limitations period or alleged an adverse employment action necessary for their retaliation claim. (Doc. No. 5.) The Court disagrees.

### A. Plaintiffs' Harassment Claim

UTT argues that Plaintiffs' allegations that they were subject to a four-year pattern of harassment are insufficient to allege that any harassment occurred during the limitations period for filing. (Doc. No. 5 at 7.) UTT asserts that Plaintiffs' failure to allege specific acts within the limitations period means that Plaintiff's claims are insufficiently pled and should be dismissed as time barred. (Doc. No. 7 at 2.) Plaintiffs respond that the court should apply the continuing violation doctrine to find that they have sufficiently alleged that they suffered continuous harassment over a 4-year period and timely filed their complaints with the EEOC. (Doc. No. 6 at 6.)

Plaintiffs argue that Hickey's sexual harassment was a continuing violation. (Doc. No. 6 at 6.) They allege that this behavior was ongoing from prior to the limitations period 2015 to well-within the filing period in 2019. (Doc. Nos. 1 at ¶¶ 11–13, 23, 6 at 6.) Plaintiffs allege that Hickey did not pay any attention to Owens until her divorce become public knowledge in 2015. (Doc. No. 1 at ¶ 13.) They contend that Hickey then began making "harassing visits to [her] office" up to two or three times a day. (Doc. No. 1 at ¶ 13.) In response to his behavior, they allege that Owens moved her office furniture in an attempt to create a physical barrier between herself and Hickey

and limited her time on campus to avoid him. (Doc. No. 1 at ¶ 13.) Similarly, Plaintiffs allege that starting soon after Jones began working at UTT, Hickey began a pattern of sexual harassment towards her. (Doc. No. 1 at ¶ 22.) They contend that Hickey "regularly commented on her appearance," "asked [her] inappropriate questions about her relationship with her husband," and made "statements regarding his sexual relations with his wife." (Doc. No. 1 at ¶ 23.) Plaintiffs further contends that he would frequently show up at her office without reason, and like Owens, Jones began to limit her time on campus due to Hickey's unwanted advances. (Doc. No. 1 at ¶ 23.)

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 825 (1976). Title VII also makes it unlawful for an employer to discriminate against an individual because the individual has opposed any practice made an unlawful employment practice by Title VII or because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

Exhaustion of administrative remedies under Title VII is not a jurisdictional prerequisite to suit but a statutory condition precedent. *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988); *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir. 1986). As a prerequisite to filing a lawsuit pursuant to Title VII, a plaintiff must first file a charge of discrimination with the EEOC within the time limits prescribed by 42 U.S.C. § 2000e-5(e). *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). The Fifth Circuit has held that a Title VII plaintiff must file a charge of discrimination with the EEOC no more than 300 days after learning of an adverse employment decision in Texas. *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir. 1997). "A claim is time barred if it is not filed within these time limits." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

When considering whether discriminatory acts that fall outside the limitations period are actionable under Title VII, the United States Supreme Court has distinguished claims alleging discrete discriminatory acts from those alleging a hostile work environment. *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 799 (E.D. Tex. 2013). Certain discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or refusal to hire, are "easy to identify." *Morgan*, 536 U.S. at 114. Although not an exhaustive list, each discrete act "constitutes a separate actionable unlawful employment practice." *Id.* A "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110. "A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Id.*

Unlike claims based on termination and failure to promote, "[h]ostile environment claims are different in kind from [such] discrete acts. Their very nature involved repeated conduct." *Morgan*, 536 U.S. at 115. The "unlawful employment practice" cannot be said to occur on any particular day because "[s]uch claims are based on the cumulative effect of individual acts." *Id.* Therefore, hostile work environment claims are subject to an equitable exception called the continuing violation doctrine "when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Whitworth v. Baker Hughes, Inc.*, No. 1:10-CV-203, 2011 WL 13196257, at *12 (E.D. Tex. Sept. 23, 2011) (quotations and citations omitted).

The continuing violation doctrine provides that when a plaintiff alleges a hostile work environment claim, "as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, 'the entire time period of the hostile environment may be considered by a court for the purpose of determining liability.'" *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 736 (5th Cir. 2017), *as revised*

(Mar. 13, 2017). As long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Morgan*, 536 U.S. at 117. The Fifth Circuit has recognized three limits on the continuing violation doctrine:

> (1) the plaintiff must demonstrate that the separate acts are related; (2) the violation must be continuing; intervening action by the employer, among other things, will sever the acts that preceded it from those subsequent to it; and (3) the doctrine may be tempered by the court's equitable powers, which must be exercised to "honor Title VII's remedial purpose without negating the particular purpose of the filing requirement."

*Heath*, 850 F.3d at 738 (citing *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009)).

Here, Plaintiffs filed their complaints with the EEOC in September 2019. (Doc. No. 6 at 6.) This would set the 300-day limitations period from November 2018 to September 2019. To successfully invoke the continuing violation doctrine, Plaintiffs must allege facts showing a connection between discriminatory incidents occurring before this period and incidents during this period. This requires alleging facts demonstrating not only that they suffered gender-based harassment both prior to and during the filing period, but also that the discriminatory acts were of the same type, occurred frequently, and were carried out by the same managers. *See Heath*, 850 F.3d at 740 (holding that the plaintiff had "alleged a continuing course of conduct" under the continuing-violation doctrine because the alleged "pre- and post-limitations period incidents involved the same type of employment actions, occurred frequently, and were perpetrated by the same managers.").

*Heath v. Board of Supervisors for Southern University*, is instructive. 850 F.3d 731. The plaintiff, a university math professor, alleged that her supervisor "began a campaign of harassment" beginning in 2003 "that continued through the filing of [her] lawsuit a decade later"

8

in 2013. *Id.* at 734. The plaintiff alleged that, from 2003 to 2013, her supervisor had interfered with her work by rewriting exams, denying her requests for sabbatical, excluding her from meetings, and, after her return from leave, refusing to allow her to participate in committees or to teach online classes. *Id.* at 735. The district court granted summary judgment to the university, concluding that "it could only consider the conduct occurring within 300 days of Heath's filing of a complaint with the EEOC." *Id.* at 734. The Fifth Circuit reversed, holding that the plaintiff had "alleged a continuing course of conduct" under the continuing-violation doctrine because the alleged "pre- and post-limitations period incidents involved the same type of employment actions, occurred frequently, and were perpetrated by the same managers." *Id.* at 740 (quoting *Morgan*, 536 U.S. at 120–21).

Accepting all of Plaintiffs' facts as true, the Court finds that under the standard the Firth Circuit articulated in *Heath*, Plaintiffs have alleged sufficient facts to successfully bring a hostile work environment claim involving continuing violations. *See Heath*, 850 F.3d at 738. The acts forming the basis of the hostile work environment and retaliation claims are all related to their work at UTT and were carried out by their supervisor. Like the plaintiff in *Heath*, they have alleged that Hickey committed an ongoing course of harassment because the incidents of sexual harassment occurred both before and during the limitations period, involved the same type of harassing activities, occurred frequently, and was perpetrated by the same supervisor. *See id.* at 740. Plaintiffs have alleged that UTT knew or should have known of Hickey's harassment but did nothing to correct the acts or to intervene. They have also alleged that there were no intervening acts by UTT which would sever the chain of liability. *See id.* at 738. Plaintiffs instead contend that even though the University found that Hickey had committed sexual misconduct toward them, UTT denied Plaintiffs' requests to be reassigned to different supervisors. (Doc. No. 1 at ¶¶ 18, 37.)

9

Finally, as in *Heath*, Defendant has pointed to no equitable consideration that would prevent the Court from considering the full scope of the continuing conduct.

Accordingly, the Court **RECOMMENDS** that UTT's Motion to Dismiss (Doc. No. 5) be **DENIED** as to Plaintiffs' harassment claim.

### B. Plaintiffs' Retaliation Claim

UTT argues that neither Plaintiff have alleged an adverse employment action necessary to sufficiently plead a retaliation claim. Plaintiffs argue that they have pled sufficient facts to support their retaliation claims. (Doc. No. 6 at 7.) As the Plaintiff's claims allege different adverse employment actions, the Court shall consider them separately.

#### I. Owens' Adverse Employment Action

The University contends that Owens' allegations of altered working conditions only hypothetically lead to the non-renewal of her contract and thus cannot form the basis of an adverse employment action. (Doc. No. 5 at 8.) Plaintiffs respond that under Fifth Circuit precedent, they have alleged facts which are adequate to plead that Owens suffered a retaliatory adverse employment action. (Doc. No. 6 at 11–12.) Plaintiffs have alleged that after suffering harassment from Hickey for four years, Owens filed a Title IX complaint with UTT against Hickey. (Doc. No. 1 at ¶ 15.) Plaintiffs state that Owens also reported Hickey to Human Resources, the Compliance Office, and the Office of the Provost. (Doc. No. 1 at ¶ 15.) UTT's Title IX Office conducted an investigation and found that Hickey has committed sexual misconduct. (Doc. No. 1 at ¶ 15.) Plaintiffs allege that after Hickey was promoted to Dean, Owens made two official requests through counsel to be re-assigned to a different supervisor, and UTT denied both requests. (Doc. No. 1 at ¶ 18.) Plaintiffs also contend that following the investigation, Owens met with Human Resources to discuss her working conditions going forward. (Doc. No. 1 at ¶ 20.) They assert that

UTT altered Owens' working conditions by excluding her from any meetings or gatherings where Hickey would be present. (Doc. No. 1 at ¶ 20.) They argue that this effectively cuts her off from 40% of her job duties and responsibilities. (Doc. No. 6 at 10.) Plaintiffs contend that this will prevent Owens from meeting expectations for her position thus negatively affecting her annual evaluations and potential for contract renewal and career advancement. (Doc. Nos. 1 at ¶ 20, 6 at 10.)

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Fifth Circuit has explained that in order to state a retaliation claim under Title VII, a plaintiff must allege that he: (1) engaged in a protected activity; (2) that an adverse employment action occurred; and, (3) that a causal link exists between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012)). "The key question is whether the challenged action is 'materially adverse' in that it is 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57). While the standard is objective, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* (quoting *Burlington*, 548 U.S. at 69.) (internal quotations omitted).

To be actionable, an adverse employment decision must be an "ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating." *Price v. Wheeler*, No. 20-10380, 2020 WL 6389964, at *3 (5th Cir. Oct. 30, 2020) (quoting *McCoy v. City*

*of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *see also Burlington,* 548 U.S. at 57 (holding that Section 2000e-3(a) "covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant .... [T]hat means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."). The Fifth Circuit has held that a reduction in job responsibilities may sometimes qualify as an adverse employment action if the loss of responsibilities is so significant as to constitute a demotion. *Thompson v. City of Waco*, 764 F.3d 500, 503–05 (5th Cir. 2014); *see Schirle v. Sokudo USA, LLC,* 484 F. App'x 893, 898 (5th Cir. 2012) (finding that "a significant diminishment of 'material responsibilities'" can constitute an adverse employment action under Title VII). But, the "mere 'loss of some job responsibilities' does not constitute an adverse employment action." *Id.* at 504 (citing *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 269–70 (5th Cir. 2005)).

Plaintiffs have sufficiently pled that UTT retaliated against Owens through an adverse employment activity. After reporting her supervisor for misconduct, Plaintiffs have alleged that the University would not allow Owens to report to a different administrator and forced her to continue to report to the man that the University found had committed sexual misconduct against her. (Doc. No. 1 at ¶ 18.) They have also alleged that the University altered her working conditions in such a way that she is effectively unable to complete 40% of her responsibilities. (Doc. No. 6 at 10.) While the Fifth Circuit has stated that the "mere 'loss of some job responsibilities' does not constitute an adverse employment action," a loss 40% of one's job is no mere loss. *See Thompson*,764 F.3d at 503–05. Considering that being unable to complete that 40% of her job would likely lead to a negative evaluation and subsequent termination, Plaintiffs have sufficiently

alleged facts to show that this loss is a diminishment of material responsibilities significant enough to constitute a demotion or an adverse employment action.

The Court therefore **RECOMMENDS** that UTT's Motion to Dismiss (Doc. No. 5) be **DENIED** as to Owens' Title VII retaliation claim.

## II. Constructive Discharge

UTT argues Jones has not sufficiently pled constructive discharge because constructive discharge requires more than the showing of harassment necessary for a hostile work environment claim. (Doc. No. 5 at 9.) Plaintiffs, however, contend that they have successfully pled constructive discharge as the University made Jones' situation so intolerable that she had no choice but to resign. (Doc. No. 6 at 8–9.) They allege that over four years Hickey sexually harassed Jones to the point that she no longer felt safe in the office. (Doc. No. 6 at 8.) Plaintiffs state that after she learned about Hickey's harassment of Owens, Jones sought remedial action through a Title IX complaint with UTT. (Doc. No. 6 at 8.) They assert that UTT did not remedy the situation even though it found Hickey had committed sexual misconduct. (Doc. No. 1 at ¶¶ 34–35.) They contend that despite the Title IX report, UTT took no action against Hickey because the University planned to promote him to the position of Dean. (Doc. No. 1 at ¶¶ 40–41.) Following Hickey's promotion, Plaintiffs allege that Jones requested to be assigned to a different supervisor other than Hickey, but UTT denied the request. (Doc. No. 1 at ¶ 37.) They assert that having exhausted every available remedy at the University, Jones ultimately resigned because she felt it was the only way to avoid Hickey's harassment given UTT's inaction. (Doc. No. 6 at 8–9.)

The Supreme Court has stated that when examining employer liability for the conduct of a supervisor, the analysis is different depending upon whether or not Plaintiff suffered a "tangible employment action." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 777 (1998). Constructive

discharge qualifies as a tangible or adverse employment action. *See Benningfield v. City of Houston,* 157 F.3d 369, 377–78 (5th Cir. 1998). To state a claim of constructive discharge, a plaintiff must allege that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign." *Mandujano v. City of Pharr, Texas*, 786 F. App'x 434, 437 (5th Cir. 2019) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). "Whether an employee would feel forced to resign is case-and fact-specific...." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005) (quoting *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990)). The Fifth Circuit stated that the appropriate standard is an objective "reasonable employee" test, which asks "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *Id.; see Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 802 (5th Cir. 2018). While the analysis of whether an employee would feel forced to resign is case-specific, the Fifth Circuit consider the following factors relevant, singly or in combination:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].

*Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649–50 (5th Cir. 2004). However, that list of factors is non-exclusive. *Ward v. Behtel Corp.,* 102 F.3d 199, 202 (5th Cir. 1997)

The Fifth Circuit has also repeatedly found that if an employee immediately resigns after suffering unlawful discrimination rather than attacking the discrimination within the context of the existing employment relationship, such as pursuing an internal grievance process of filing an EEOC complaint, the employee has not been constructively discharged. *Williams v. Barnhill's Buffet Inc.,* 290 F. App'x 759, 762 (5th Cir. 2008) ("An employee who resigns without affording the employer a reasonable opportunity to address her concerns has not been constructively

14

discharged."); s*ee Woods v. Delta Beverage Group, Inc.,* 274 F.3d 295, 301 (5th Cir. 2001) (for purposes of the constructive discharge analysis, a reasonable employee would have reported the sexual harassment before resigning); *see also Boze v. Branstetter,* 912 F.2 801, 805 (5th Cir. 1990) (holding that, in most cases, a reasonable employee would pursue internal remedies or file an EEOC complaint before resigning).

Here, Plaintiffs have sufficiently alleged facts to support a theory of constructive discharge. First, they claim that Jones originally sought a remedy to Hickey's harassment within the UTT system, but the University promoted Hickey even though it found he had committed sexual misconduct. (Doc. No. 1 at ¶¶ 40–41.) Following his promotion, Plaintiffs state that Jones then asked to be assigned a different supervisor, but the University denied the request. (Doc. No. 1 at ¶ 37.) Finally, they allege that having exhausted her remedies Jones resigned as she felt that it was the only way to avoid Hickey's harassment given the response by UTT. (Doc. No. 6 at 8–9.) Plaintiffs have alleged sufficient facts to show that given Jones' situation, a reasonable person would feel forced to resign having sought remedial action from their employer with no relief. *See Woods,* 274 F.3d at 301 (for purposes of the constructive discharge analysis, a reasonable employee would have reported the sexual harassment before resigning).

Accepting as true all well-pleaded facts and viewing them in the light most favorable to the Plaintiffs, Owens and Jones have stated a valid claim to survive a 12(b)(6) motion, and the Court accordingly **RECOMMENDS DENYING** UTT's Motion to Dismiss (Doc. No. 5) as to Jones' Title VII constructive discharge claim.

## CONCLUSION

For these reasons, the Court **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. No. 5) be **DENIED**. Within fourteen (14) days after receipt of the Magistrate Judge's report and

recommendation, any party may serve and file written objections to the findings and recommendations contained in the report and recommendation. A party's failure to file written objections to the findings, conclusions and recommendations contained in this report and recommendation within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 7th day of December, 2020.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE